## Bernard H. Seitman v. Bernard Seitman.

1. INJUNCTIONS—*Liens.*—Upon consideration of the peculiar facts and circumstances of the case the court are of the opinion that the evidence warranted the action of the trial court.

**Bill for an Injunction, etc.**—Appeal from the Circuit Court of Effingham County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

R. C. HARRAH and BARNEY OVERBECK, attorneys for appellant.

CHARLES H. KELLY and SYLVESTER F. GILMORE, attorneys for appellee.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of
the court.

Appellant, who is the son and only child of appellee,
brought this suit against his father, in the Circuit Court of
Effingham County, by filing a bill in chancery, primarily
to restrain his father by injunction, " from selling or con-
veying away or incumbering any part of the real estate"
owned by his father, which consists of a farm of about 365
acres of land, or, that an accounting should be taken by the
court of the dealings and transactions between the parties
from the 8th day of August, 1875, when appellant arrived
at full age, down to the date of filing the bill in this case.

Soon after appellant arrived at full age his father and
himself made a verbal agreement as to how appellant
should work in assisting in carrying on the farm, and appel-
lant in his evidence stated the agreement as follows :

" Q.   When you was of age, Barney, what conversation
or agreement did you make with your father and your
father with you about this land ?

" A.   Well, he said after I got of age that he couldn't
pay no money but that I can work for him and keep him
up to his death and so everything should go to me."

Appellee's testimony as to the agreement was to the
effect that his son was to live with him in his house on the
farm, and that he should take care of appellee and his
wife during their lives, and that appellee should pay appel-
lant no wages, but all should live " as one family," and
that when the parents of appellant died appellant should
inherit the property.   There is but little difference between
the testimony of father and son as to the agreement.

About a year after appellant became of age, he married,
and with his wife resided with his father and mother, in
the house on the farm, as one family.

About two years after the marriage, appellant's wife
died, and within two or three years thereafter appellant
married a second wife who also became one of the family.
After a time appellant's second wife became out of health,
and her physicians advised her removal from the farm,
after she had been taken to hospitals in Cincinnati and

Effingham for medical treatment, and had failed to get relief. In the spring of 1890, appellant rented a house about a mile distant from his father's house, and removed his family to the rented house, but continued to farm a portion of his father's farm, paying his father for the use of the land one-third of the crops raised except the hay land, which he had the use of free of rent.

When appellant removed from his father's house, he took a part of the personal property on the farm, such as mules, cattle, hogs, furniture, etc.; but there was no final settlement between the parties, of their personal dealings, if up to that time either party considered there was anything to be settled.

In 1896, appellant desired to build a house for himself and family to live in, on the forty-five acre tract of land described as the northwest fractional quarter of section eighteen (18), town 7 north, range 7 east of the third principal meridian, and to this appellee consented, and the house, with out-buildings, was built by appellant at a cost of about $11,000, and appellant moved into it with his family and has since remained there.

In September, 1900, appellee's wife died, and appellee was left alone in the home where he had spent the most of his life.

Up to the time of her death, there seemed to have been little, if any, disagreement between the parties, as to carrying on the farm, both "doing the best they could" in that respect, each family assisting the other in sickness as well as in health, each saying "it is all one family." After the death of appellee's wife, appellee desired to remain and live in his own house, but appellant's second wife refused to go there to reside, and so also did appellant; appellant offered to take his father, who had become quite aged, to his new house on the farm and take care of him there, but appellee would not consent to such an arrangement, which seems to be the beginning of the trouble between the parties.

Appellee answered appellant's bill, admitting some of

the charges in it, and denying others; 'invoking the aid of
the statute of frauds and perjuries, because no agreement
about the land had been reduced to writing and signed by
the parties; and also invoking the protection of the statute
of limitations as to an accounting prayed for in appellant's
bill.

Appellee followed his answer with a cross-bill, in which
he charges that his son and wife refused to live with and
take care of him; that he is seventy-two years of age and
that his present condition requires the presence, care and
attention of younger persons; that he had requested his
son to have the dwelling house on the farm in which orator
had long resided, properly repaired and put in suitable
condition for living in, but the son refused to do so; that
January 17, 1901, he informed his son he was too old to
live alone, and that he had an opportunity of disposing of
the farm but if his son and wife would move into his house
and take care of him he would keep the farm until his
death so it would descend to his son, but the son refused
to comply with the request, and on the same day appellant
brought this suit against appellee. Appellee answered the
bill and followed his answer by filing a cross-bill against
appellant, in which he charges that appellant has no right
to the possession of the land on which he has erected a
dwelling house.

The prayer of the cross-bill is "that the court will ascer-
tain the rights of the parties and decree that the defendant
shall deliver up possession of said northwest fractional
quarter of section 18, town 7 north, range 7 east, 3d
P. M., and upon failure to do so" that a writ of restitution
be issued to the sheriff of the county to restore to appel-
lee the possession of the land.

The answer to the cross-bill is a substantial reiteration
of what complainant had set up in his original bill.

Replications were filed to the answers to the original
bill, and cross-bill.

So far as we are able to ascertain, the bill and cross-bill
were set down for a hearing together, on oral evidence
heard by the court.

Seitman v. Seitman.

The court dismissed the original bill so far as stating an account between the parties for labor was concerned, but without prejudice to the right of appellant to sue for his services in a court of law, and the court decreed a lien on the fractional quarter of section 18, in township and range before stated, in favor of appellant for $1,100, and directed the master in chancery to sell the land if the money was not paid within ninety days from the entry of the decree, and decreed that appellee pay the cost in the case, but made no direct order on the cross-bill, and as counsel for each of the parties seem to have taken no notice of the cross-bill, we need not concern ourselves about it.

The errors complained of by appellant are the refusal by the court of a decree finding the " amount due complainant for labor and services performed under contract set forth in bill in addition to lien for improvements, and awarding him decree therefor," and " in refusing to enter decree finding agreement set forth in bill is in full force as far as complainant is concerned and restraining defendant from conveying away lands described in said bill."

No cross-errors are assigned by appellee, therefore no question of the correctness of the decree in awarding appellant a lien on the forty-five acres of land for $1,100, is raised for us to pass upon.

There is no certain evidence in the record, that appellee has sold or will sell any of his land, and there is a lack of evidence that he has failed to perform his part of the contract; but whether appellant has failed to perform on his part, or whether appellee has waived a performance by appellant, are questions about which we express no opinion.

We are not prepared to say the court erred in not finding the money value of appellant's services to appellee, nor do we hold that either party is absolved from his obligation to the other party.

The obligation is not altogether on one side.

We have examined with care all of the authorities cited by appellant's counsel in support of their contentions and find none of them applicable to this case, and upon consid-

eration of the peculiar facts and circumstances surrounding the case (of which we have stated but a few), we can not say that the Circuit Court has committed any error for which the decree should be reversed, therefore it is affirmed.